UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LISA LUCIA, | : | |
| | : | Civil Action No. 12-3787 (SDW)(MCA) |
| Plaintiff, | : | |
| v. | : | **OPINION** |
| MICHAEL CARROLL; CITY OF WOODBRIDGE, THROUGH ITS POLICE DEPARTMENT; JOSEPH STRAILE, | : | May 2, 2014 |
| Defendants. | : | |

**WIGENTON**, District Judge.

Before the Court is Michael Carroll ("Officer Carroll") and the City of Woodbridge's ("Woodbridge") (collectively "Defendants") Motion for Summary Judgment ("Motion") pursuant to Fed. R. Civ. P. 56(c). This Court has jurisdiction pursuant to 28 U.S.C. § 1331. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). This Motion is decided without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons stated below, this Court **GRANTS** Defendants' Motion with respect to Counts I, II, and III.

**FACTUAL AND PROCEDURAL HISTORY**

Plaintiff resides in Colonia, New Jersey. (Compl. ¶ 1.) Plaintiff and Joseph Straile ("Straile") have known each other for approximately fourteen years and have a five-year-old son together. (Defs' Statement of Material Facts ("Defs' SOF") ¶¶ 4-5.) Plaintiff maintains sole custody of the child and Straile is allowed supervised visitations. (Id. ¶ 8; Compl. ¶ 8.) Between

1

April 2001 through April 2012, Plaintiff reported thirty-six incidents to the police, of which several reports related to domestic violence. (Defs' SOF ¶¶ 6-7; Defs' Br. Ex. E.)

On January 1, 2011, at approximately 5:30 p.m., after a supervised visitation, Straile dropped off his son at Plaintiff's home. (Defs' SOF ¶ 9; Defs' Br. Ex. F.) Plaintiff and Straile engaged in a heated argument regarding visitation. (Defs' SOF ¶ 9.) Straile was enraged, punched the refrigerator, and left Plaintiff's home. (Pl.'s Statement of Material Facts ("Pl.'s SOF") ¶ 10; Pl.'s Ex. 1.) At approximately 6:38 p.m., Straile went to the City of Woodbridge Police Department and reported a domestic violence incident. (Defs' SOF ¶ 11.) Officer Carroll—a police officer for the City of Woodbridge since 2008—was dispatched to respond to the report. (Id. ¶¶ 11, 27.) Straile alleged that Plaintiff attacked him with a knife causing abrasions to his right hand and right abdomen. (Id. ¶ 12.) Officer Carroll signed Straile's complaint for Plaintiff's aggravated assault based upon Straile's statements, Officer Carroll's investigation, and the visible injuries. (Id. ¶ 14; Defs' Br. Ex. I.) Officer Carroll took photographs of Straile's injuries and placed them into evidence. (Defs' Br. ¶ 15; Defs' Br. Exs. F, J.) After the complaint was filed, Officer Carroll sought an arrest warrant from Judge Morse of the Woodbridge Municipal Court. (Defs' Br. ¶ 16.) Judge Morse found probable cause and set bail at $20,000.00 with no 10% option. (Id.)

At approximately 10:30 p.m., Officer Carroll and another officer arrived at Plaintiff's home to arrest her and charged her with aggravated assault. (Id. ¶ 17; Compl. ¶ 12.) Plaintiff was taken into custody and then transferred to the Middlesex County Jail workhouse. (Pl.'s SOF ¶ 37.) On January 2, 2011, after spending fifteen hours in jail, Plaintiff posted bail. (Id. ¶ 38; Defs' SOF ¶ 22.)

After being released from jail, Plaintiff filed a restraining order against Straile along with a complaint for filing a false report with law enforcement. (Defs' SOF ¶¶ 23-24.) On or about May 4, 2011, Plaintiff's aggravated assault charge was presented before the Middlesex County Grand Jury and she was not indicted. (Id. ¶ 25; Pl.'s SOF ¶ 46.)

On January 26, 2012, Straile was found guilty of filing a false report. (Defs' SOF ¶ 26.) Plaintiff commenced the instant action on June 20, 2012 against Officer Carroll, the City of Woodbridge through its police department, and Straile alleging the following Counts: (1) violations of 42 U.S.C. § 1983 as to Officer Carroll; (II) violations of the New Jersey Constitution and New Jersey Civil Rights Act as to Officer Carroll; (III) failure of the City of Woodbridge to train, supervise and/or discipline Officer Carroll; (IV) false arrest/false imprisonment as to Straile; (V) malicious prosecution as to Straile; and (VI) intentional infliction of emotional distress as to Straile. The City of Woodbridge and Officer Carroll brought the instant Motion for Summary Judgment with respect to Counts I, II, and III.

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." <u>Id.</u> at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> The dispute is not genuine if it merely involves "some metaphysical

doubt as to the material facts."  Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings.  Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue."  Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (quoting Celotex Corp., 477 U.S. at 325).  Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case."  Black Car Assistance Corp. v. New Jersey, 351 F. Supp. 2d 284, 286 (D.N.J. 2004).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law.  Celotex Corp., 477 U.S. at 322-23.

**DISCUSSION**

   **I.     Count I:  Violations of 42 U.S.C. § 1983 as to Officer Carroll**

Pursuant to 42 U.S.C. § 1983,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. "Section 1983 provides private citizens with a means to redress violations of federal law committed by state individuals." Woodyard v. Cnty. of Essex, 514 F. App'x 177, 180 (3d Cir. 2013). To assert a § 1983 claim, "a plaintiff 'must establish that [ ]he was deprived of a federal constitutional or statutory right by a state actor.'" Id. (quoting Kach v. Hose, 589 F.3d 626, 646 (3rd Cir. 2009)). Plaintiff alleges § 1983 violations against Officer Carroll based on false arrest and malicious prosecution.

**A. False Arrest**

The Fourth Amendment of the United States guarantees:

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

"The Fourth Amendment prohibits arrests without probable cause." Berg v. Cnty. of Allegheny, 219 F.3d 261, 269 (3d Cir. 2000). The proper inquiry in analyzing a § 1983 claim based on false arrest "is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir. 1988). Generally, the question of probable cause in a § 1983 suit is one for the jury. Campbell v. Moore, 92 F. App'x 29, 33 (3d Cir. 2004). "However,

5

a district court may conclude 'that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding.'" Merkle v. Upper Dublin School Dist., 211 F.3d 782, 789 (3d Cir. 2000).  In that case, the court may enter summary judgment accordingly.  Id.

In determining whether probable cause existed for an arrest, courts apply an objective standard based on "the facts available to the officers at the moment of the arrest." Beck v. State of Ohio, 379 U.S. 89, 96 (1964).  "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995) (citing United States v. Cruz, 910 F.2d 1072, 1076 (3d Cir. 1990)).  Nevertheless it does not "require the same type of specific evidence of each element of the offense as would be needed to support a conviction." Adams v. Williams, 407 U.S. 143, 149 (1972).

Additionally, under the New Jersey Domestic Violence Act, "[a] law enforcement officer may arrest a person; or may sign a criminal complaint against that person, or may do both, where there is probable cause to believe that an act of domestic violence has been committed." N.J. Stat. Ann. § 2C:25-21(b).  However, "if . . . [t]he victim exhibits signs of injury caused by an act of domestic violence" a law enforcement officer "*shall* arrest the person who is alleged to be the person who subjected the victim to domestic violence and *shall* sign a criminal complaint." N.J. Stat. Ann. § 2C:25-21(a)-(1) (emphasis added).

Moreover, "[u]nder Section 1983, even if probable cause does not exist in fact, defendants may be entitled to assert a defense of qualified immunity if they reasonably believed that probable cause existed." Wildoner v. Borough of Ramsey, 162 N.J. 375, 385 (2000).  The United States

Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Additionally, the Supreme Court has stated "that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable." Anderson v. Creighton, 483 U.S. 635, 641 (1987).

Here, Plaintiff alleges Officer Carroll's conduct "resulted in Plaintiff being falsely, and unlawfully arrested and detained, thereby depriving Plaintiff of her right to be free from an unreasonable and unlawful seizure of her person in violation of the Fourth Amendment to the United States Constitution." (Compl. ¶ 29.) Based on the record, the undisputed facts establish that Officer Carroll responded to Straile's domestic violence incident report in which he took a full body image of Straile and photographed his injuries in line with the department's policy of taking photographs in the event of a domestic violence incident involving injuries. (Carroll Dep. 25:5-18, Mar. 28, 2013; Defs' Br. Ex. J.) After taking the photographs of Straile's injuries and writing the report, Officer Carroll determined—based upon his investigation and the visible injuries—that there was sufficient probable cause to seek an arrest warrant from Judge Morse. (Defs' Br. 16.) Following an independent probable cause determination, Judge Morse found that there was probable cause to issue an arrest warrant. (Defs' Br. Ex. I.)

Based on the undisputed facts, probable cause did exist as a matter of law at the time of arrest and the evidence could not reasonably support a contrary factual finding. Additionally, in accordance with the New Jersey Domestic Violence Act, Officer Carroll acted reasonably in

seeking out an arrest warrant for the Plaintiff based on Straile's visible injuries. See N.J. Stat. Ann. § 2C:25-21(a)-(1). Furthermore, Officer Carroll would also be protected by qualified immunity as he reasonably believed probable cause existed. Therefore, Plaintiff's false arrest claim fails as to Officer Carroll.

### B. Malicious Prosecution

To establish a malicious prosecution claim under § 1983, a plaintiff must demonstrate that:

> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Camiolo v. State Farm Fire & Cas. Co., 334 F.3d 345, 362-363 (3d Cir. 2003). To prevail on a malicious prosecution claim, the plaintiff must show that the officer lacked probable cause to arrest. Wright v. City of Phila., 409 F.3d 595, 603-604 (3d Cir. 2005). "Actual malice in the context of malicious prosecution is defined as either ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose." Morales v. Busbee, 972 F. Supp. 254, 261 (D.N.J. 1997) (quoting Lee v. Mihalich, 847 F.2d 66, 70 (3d Cir. 1988)). Malice "may be inferred from lack of probable cause." Morales, 972 F. Supp. at 261.

In the instant matter, Plaintiff contends Officer Carroll's actions "amounted to malicious prosecution because there was no probable cause for the arrest." (Compl. ¶ 28.) However, as this Court has already concluded, there was probable cause for the arrest. Officer Carroll sought an arrest warrant after conducting an investigation which included documenting Straile's statement and taking photographs of Straile's injuries. An arrest warrant was then issued after a second probable cause determination by Judge Morse. Further, Officer Straile's actions were consistent

8

with the New Jersey Domestic Violence Act. Plaintiff makes reference to comments made by the municipal court judge during Straile's trial for filing a false report. While these comments are helpful in understanding the context of the municipal proceedings, they are neither dispositive nor binding in the instant matter. Based on the undisputed facts, Plaintiff's malicious prosecution claim fails. Accordingly, Defendants' motion for summary judgment as to Count I is granted.

### II.   Count II: Violation of the New Jersey Constitution and New Jersey Civil Rights Act

In Count II, Plaintiff that Officer Carroll "violated the rights of Plaintiff under Article I, Paragraph 7 of the New Jersey Constitution and the New Jersey Civil Rights Act." (Compl. ¶ 31.) Neither party specifically addresses Count II beyond what is discussed with respect to Count I. Because the analysis for Plaintiff's New Jersey claims are the same as that of Count I, for the reasons stated above, this Court finds that Defendants are entitled to summary judgment as to Count II.

### III.   Count III: Violation of 42 U.S.C. § 1983 as to the City of Woodbridge

In the instant matter, Plaintiff alleges Woodbridge "failed to train, supervise and/or discipline Defendant Carroll so as to prevent him from unlawfully depriving citizens of their constitutional rights, and particularly Plaintiff." (Compl. ¶ 33.) Under § 1983, a city can be liable for failure to train where the failure to train reflects a "deliberate" or "conscious" policy by a municipality that causes a constitutional deprivation. City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989). Liability will not be established "by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible." Id. "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." Id.

Courts have identified two situations in which deliberate indifference is established. See Brown v. Shaner, 172 F.3d 927, 931 (6th Cir. 1999). "One is failure to provide adequate training in light of foreseeable consequences that could result from the lack of instruction. A second type of situation justifying a conclusion of deliberate indifference is where the city fails to act in response to repeated complaints of constitutional violations by its officers." Brown, 172 F.3d at 931. In addition to establishing deliberate indifference, "there must be a 'direct causal link between a municipal policy or custom and the alleged constitutional deprivation' to ground municipal liability." Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 249 (3d Cir. 2007) (quoting City of Canton, 489 U.S. at 385).

Under New Jersey state law, all law enforcement officers attend an initial training, within ninety days of appointment or transfer, on "the handling, investigation and response procedures concerning reports of domestic violence" and attend "annual inservice training of at least four hours." N.J. Stat. Ann. § 2C:25-20(a)(1)-(2). Officer Carroll testified that prior to graduating from the Police Academy in Monmouth County, he received domestic violence training. (Carroll Dep. 17:3-11.) Officer Carroll's training records indicate that he received domestic violence in-service training on December 8, 2008, June 2, 2009, November 19, 2009, November 7, 2010, November 28, 2011 and November 29, 2012. (Defs' Br. Ex. O.) Further, Officer Carroll testified the domestic violence trainings were four hours long. (Carroll Dep. 17: 19-24.) As illustrated by Officer Carroll's training records and testimony, he has received the proper domestic violence training consistent with New Jersey state law. Furthermore, Plaintiff has failed to show that Woodbridge's failure to train, supervise and/or discipline its employees evidences a deliberate indifference to the rights of its inhabitants. Accordingly, as there is no genuine issue of material

fact regarding Woodbridge's failure to train/supervise, this Court grants Defendants' motion for summary judgment as to Count III.

**CONCLUSION**

For the reasons stated above, Defendants' Motion for Summary Judgment is **GRANTED** with respects to Counts I, II, and III.

<u>s/ Susan D. Wigenton, U.S.D.J.</u>

cc:     Magistrate Judge Madeline C. Arleo